May it please the court, this case is on appeal of the BIA's denial of petitioner's application for cancellation of removal and his claim that the trial by video conference denied him the due process based on the facts in this case. Section 8 U.S.C. 1229 AB2A3 authorizes the use of video conferences in removal proceedings. To be clear, petitioner is not challenging the constitutionality of that statute. Instead, what petitioner is seeking now is to apply the statute to the specific facts regarding his eye injury that the use of the video conference violated 8 U.S.C. section 1229 AB4B, which requires in pertinent part that the petitioner be afforded a reasonable opportunity to present evidence on his own behalf. Petitioner is challenging the use of the televideo conference in this case as an applied challenge in that the video conference proceedings prevented him from having that opportunity to be heard in a meaningful manner. What we cite to is the case of Raphael, Your Honors. That court upheld that statute authorizing trial by video conference is valid. However, it allowed the petitioner to use an applied argument. There, the petitioner, again, Your Honor, the Raphael, the statute authorizing the video testimony, they deemed it facially valid, but the petitioner was denied the opportunity to rebut evidence presented by the government that calls her credibility into question. There, petitioner challenges the use of the videoconferencing in her case, claiming that the videoconferencing proceeding prevented her from having an opportunity to be heard. The court concluded in that case that the IJ denied her rights under 8 U.S.C. section 1229 AB4B to provide a reasonable opportunity to examine the evidence used against her. Here, the petitioner's evidence involves an eye injury that occurred while the petitioner was detained in the custody of the government. Now, I mean, I've had the eye injury described in the papers. Apparently, it was industrial strength soap of some kind. That's correct, Your Honor. And the IJ clearly understood that there was an eye injury and that it had some seriousness to it. What additional material evidence would the IJ have gotten had he been able to see it in person rather than on the video? Your Honor, we believe that the impact of seeing the eye injury in person and seeing that there is significant eye disfigurement, that the petitioner could no longer see from the eye. He completely lost sight, and there was a thick film, gray film, over the eye. I believe that was a material evidence that the IJ could not appreciate through televideo. And there's evidence in the record that the camera was stationary. There were problems with the video equipment from the onset of the proceeding. The IJ made reference to the fact that he couldn't control it, that it was up to the government attorney to try to fix any kind of deficiencies through the televideo on our end in Lancaster, California. So we understood that to mean that the IJ had no control over the video. It was never focused on the petitioner's eye injury, and just the quality of the televideo conferencing was so poor that we feel that had he been in person, it would have significantly impacted that evidence. Is there a record either in front of the IJ or on appeal to the BIA that tells us anything more about it than you're able to do orally or in writing, as to say is there, for example, a color picture of it? Your Honor, may you rephrase the question? Is there a color picture of the eye injury in the record in front of either the IJ or in front of the BIA on appeal when you raise this issue? No, Your Honor, there is no color picture available. So that puts the BIA and us in a somewhat difficult position because your whole point is the injury was so severe and had such a visual impact, had you seen it properly or had the IJ seen it properly, it would have made a difference. But I don't have a color picture of the eye, nor did the BIA. Correct, Your Honor. I believe that when this case was set for televideo conference, it should never have been set for televideo conference. And if you look at the administrative record, we were initially supposed to have a hearing back in December 18th of 2008 with a visiting judge, and it was understood to be that it was an in-person hearing. It was later reset to January 6th, and that's when the televideo equipment went to Lancaster and it was used regularly for a period of time. At that point, we didn't know how severe the eye injury would be and the actual disfigurement of it. Because the petitioner was not allowed to be at the actual Lancaster facility because they couldn't properly administer the medication, he was being transferred from detention center to detention center to see who would accept him. Eventually, he came to the hearing after having spent a few days at a hotel with an ICE agent because no one would want to take him and take that risk since there's already evidence that for a period of eight hours, he received no medical attention. So there's already issues that possibly the eye disfigurement wouldn't have been so severe had he had the correct medical attention from the beginning. And what's at issue in the hearing is cancellation of removal? Correct. And hardship? Correct. And so the question of the degree of eye injury goes to hardship. It does, Your Honor. And was it apparent to the IJ that he couldn't see out of the eye? Did the IJ know that? Yes, Your Honor. Through the testimony, when we discussed the eye injury, the petitioner indicated that as of that day, he was not able to see out of there. Do you have any cases where the extent of an injury is determined other than by medical reports and testimony? In other words, somebody looks and says, here is the extent of the injury. Is that typical? We don't have specific cases to reference. There's never been one, has there? We have not been able to find that. But medical reports determine the extent of the injury, don't they? Correct. Well, the reports summarize what has occurred and, in medical terms, what is going on. But to a lay person, and I'm assuming to the IJ, it doesn't mean as much to us. Didn't the IJ say that it appears to be an injury of some serious nature and likely constituted a substantial hardship? Yes, Your Honor. He did read that into the record. How much more would he have known if he had just looked at the eye? Well, I believe that by not having an in-person hearing, we are left to speculate whether that would have impacted the IJ's decision if he would have considered it perhaps beyond more than serious, perhaps catastrophic or balance-shifting in his analysis. And that's why we would request a remand to have an in-person hearing so that the IJ could appreciate the significance in the eye and that there is permanent eye disfigurement and permanent loss of sight. No change? No change. I've spoken to the petitioner, and it's a corneal transplant that is needed. He cannot use any kind of device over the eye to make the sight better because there's severe scarring in the cornea. Nothing available right now would allow any improvement in that sight other than a corneal transplant at this point. Okay. Why don't we hear from the government? Thank you. Thank you. Good morning. May it please the Court, William Minnick representing the respondent. Of course, as we said in our brief, the Court lacks jurisdiction, except to the extent that petitioner has raised a legal or constitutional claim. But I'll jump right to the eye injuries. They've raised a due process claim, which either is or is not good. So we've got jurisdiction to decide that. Do you agree with that? We have jurisdiction to decide whether there was a violation of due process. I do agree with that, Your Honor. And he has raised a due process claim, an as-applied constitutional claim with regard to the video teleconferencing. Regarding the eye injury, I mean, there are two prongs here, whether he got a full and fair hearing and whether he's demonstrated prejudice. In terms of whether he got a full and fair hearing, there's nothing in the record to indicate that he requested to approach the camera, to give a close-up view of his eye. And there was no description from counsel. She said something just now about a thin gray film. That's the first I've heard about that. I don't believe that's in the record. And I don't believe she made any attempt to say, immigration judge, just in case you can't see over the video teleconference, I'll read into the record a description of the eye that the DHS counsel could have stipulated to. So in terms of the full and fair hearing prong, she never requested a close-up view of the eye. But, of course, the issue really turns on prejudice. And here the immigration judge's decision indicates that he considered a doctor's report describing the injury. That's record at 249. He heard petitioner's testimony about the injury. That's record at 170 to 172. And the immigration judge characterized the injury, in his opinion, as serious. That's record at 132. And the immigration judge actually did more than mention the eye injury in passing. He spent a good paragraph on it. He talked specifically about quantified division reduction that was noted in the medical report. He noted that there was a large central corneal scar. And the immigration judge acknowledged the possibility that petitioner might need a corneal transplant in the future. So the immigration judge did more than mention it in passing. He actually discussed it, in his opinion, indicating that he considered it. But most importantly, the most important thing in this case is that petitioner fails to allege what additional information the immigration judge would have had about the eye injury if there had been an in-person hearing. We just don't know. Do you concede the possibility, not in this case, but do you concede the possibility of a due process violation in certain circumstances from a video hearing? You're asking me if there's any way imaginable that I could think of? I mean, sure, I think it's possible that – What would be the standard that the government would suggest? Is there any way to articulate it beyond just saying, well, it's a violation of due process, we know it when we see it? Well, I think the standard is just the standard this court always uses for a due process claim. It's the Lata case that the petitioner must show that it would change the outcome of the proceedings. That's the standard in any due process consideration, and that should be the standard here and in any video teleconferencing cases, whether the petitioner can demonstrate that the outcome – in other words, if there had been an in-person hearing, that would have changed the outcome of the proceedings. Or I think it would likely have or something. It's not would certainly have, but to some degree a likelihood built into the standard. But you would simply apply that standard? Yes, Your Honor. Unless the court has additional questions, we'd simply ask the court to deny the petition. Okay, thank you. You've saved about a minute. Your Honor, we'd just like to summarize that we believe that the petitioner not having the opportunity to fully present the physical evidence of the eye disfigurement did not violate his right to have a full and fair hearing. The reason why – Is that a conclusion or is that a fact? We believe, Your Honor, that because he wasn't able to present to the I.J. in person the actual damage to the eye, that that was physical evidence that he was not able to present in a meaningful manner. Yeah, but it's a conclusion that he wasn't able to demonstrate the extent of his injury, isn't it? The way we're presenting – If we've made that ruling, wouldn't we say you can't rule in a case of this sort unless you personally see, and most of the people who personally look don't have the medical expertise to know what they're looking at? Isn't that pretty much where we are in this case and every case similar to it? I think that medically we wouldn't be able to know exactly what's going on, but from a social standpoint and the stigma of seeing an eye disfigurement, I think that carries a big impact. When someone is considering the equities and the factors in this case, and it possibly could have shifted the balance in the I.J.'s decision-making process, and I feel that that's the prejudice that we have here. But we know what he said. He said it's serious, didn't he? He read the report into the record, but still it's not the same impact as seeing a person with the eye disfigured. So would you have to bring him here to court and let us look? I would bring a picture. If I cannot bring him, I would bring something that would amplify that. That would be the second option. It wouldn't be the best option, Your Honor. The best option would be an in-person hearing in this particular case because of the eye disfigurement. Okay. Thank you. Thank you very much. The case of Vilches v. Holder is now submitted for decision. The next case on the calendar, Unites v. Tamayo, has been submitted on the briefs. The next argued case, Unites v. Romero-Corona. When you're ready, counsel. Good morning, Your Honors. May it please the Court, Jennifer Kuhn on behalf of Isidro Romero-Corona. Mr. Romero's felony conviction should be vacated because there was insufficient evidence of a prior commission of a similar offense. In the alternative, I'm asking for a reversal because of error in refusing to give the defense a jury instruction and the error in admitting the misdemeanor judgment and other bad acts evidence. All of these issues relate to the government's attempts to prove a prior commission of a 1325 offense such that this offense, the second offense, would be a felony. That is an element of the felony offense that needs to be pleaded and proven. And the plain language of the statute does refer to a subsequent commission of such an offense. Now, the Arambula and Arriaga cases, which are both from the 1980s, in those cases this Court said the government must prove not just a commission but a prior conviction that was intended to be a defense-friendly rule, as this Court stated in Arambula. But more recent precedents, such as the Rodriguez-Gonzalez case, which I cited from 2004, uses the words commission and conviction basically interchangeably. This Court refers back and forth to each of those as elements or as matters that need to be proven. The Court also referred to the fact of a previous entry. So I would submit that under that precedent it's not clear which should be charged and proven, the commission or the conviction. There is some uncertainty in the legal landscape. But here the government elected to charge in the indictment a prior commission, and that's at ER 152, as evidenced by a prior conviction. Now, at the Rule 30 conference, there was a discussion with the Court over which element needed to be proven, the prior commission versus the conviction. And at ER 37, this Court was convinced by case law that said the jury has to find a prior commission of the offense, and the government said correct. Then the Court said, not a conviction, but a commission of the offense. And at that point the government didn't disagree, but just went on to argue that a conviction would be admissible to prove a conviction. Now, the prior conviction was based on a plea of guilty? Correct. And we've got case law that says a no-law plea is not enough to show commission. But a plea of guilty, in order for the judge to accept the plea, there has to be an admission of guilt by the defendant in that proceeding. Isn't that right? Correct. I think that's what the district judge was relying on here. Well, I believe Your Honor is referring to the Wynn case, which is the main case that the parties were disputing before the Court and here on appeal. In that case, it's true that this Court was addressing sufficiency and admissibility of a no-contest misdemeanor plea, which is a little different than what we have here. And the sufficiency discussion did focus on both the no-contest aspect and the misdemeanor aspect. But then when this Court went on to address admissibility, it did state that a no-contest plea and a misdemeanor conviction, both, would be inadmissible to prove prior commission of an offense. And that's because the Court noted that at the misdemeanor level, a motivation to defend is minimal or nonexistent. I would assume that that's what happened here. The prior misdemeanor resulted in a 45-day sentence. It's basically impossible to litigate a case through trial and sentencing in a federal court within 45 days. And this case here is a good example of that. This was a 1325 trial. It took nearly three months from arrest to get to trial, and then it took another three months for sentencing because the Court ordered a PSR. So if Mr. Romero had been offered a misdemeanor disposition in the instant case, there would have been no incentive for him to litigate rather than to accept that misdemeanor because it's impossible to... Let's assume the test is a prior conviction. Pardon me? Let's assume the test is a prior conviction.  Well, if the element is a prior conviction, then Your Honor is correct, that the prior conviction needs to come in. But I'm arguing that under... And normally when a judge takes a plea, in a federal case anyway, I assume it's the same in the state court, but this was a federal conviction, wasn't it, the prior? Correct. He makes a finding. The defendant essentially admits his guilt if it's not a NOLO plea, and the judge makes a finding that there's a factual basis for the plea, which is essentially a finding that the evidence would be sufficient to show that he's guilty of the crime. Why isn't that enough even to show that he committed the crime because he's essentially admitted it during the plea allocution? That's... I understand Your Honor's logic, but under the Winn case, this Court has made it clear that a misdemeanor judgment, apart from whether it was a no-contest plea or a guilty plea, is not admissible to prove a prior commission of that crime because of a realistic understanding of the incentives that defendants face at the misdemeanor level. Well, there are always incentives to people pleading guilty. I mean, they don't plead guilty without an incentive. I mean, that's the reality of it. And if we assume that during the course of the Rule 11 allocation, the defendant admitted his guilt, and the judge made a finding that there's a factual basis for the plea, it proves the commission of the offense. Assuming commission is the test. All I can say, Your Honor, is to refer you to the language in Winn where this Court said, misdemeanor judgments of conviction may be admissible under Rule 8038 to prove some other element of the subsequently charged crime, but they are not admissible to prove that the defendant actually committed the underlying crimes charged. And elsewhere, the Court said misdemeanor convictions are inadmissible because motivation to defend at this level is often minimal. But would the Rule 11 allocution be admissible? Well, under the logic of Winn, if it was necessary to prove some other element, some other. . . But I'm not talking. . . I'm not asking you about the judgment of conviction. I'm talking about the transcript of the Rule 11 proceedings in which the defendant admits his guilt, admits that he did what he's accused of doing. Would that be admissible to show commission? No, Your Honor. It might be admissible to prove some fact that was admitted in the colloquy, such as alienage. But under the logic of Winn, it wouldn't be admissible to prove the commission of the crime the person is pleading to at the misdemeanor level. So even though the Rule 11 allocution would be an admission and not even constitute a hearsay, technically under the federal rules of evidence, you say it wouldn't be admitted to show that he actually admitted his guilt to prove that he committed the crime? I don't think it can come in under Winn. But in any event, that's not the situation we had here. We didn't have submission of the Rule 11 colloquy. All we had was the misdemeanor judgment. And under Winn, I think it's clear that that can't come in to prove the prior commission, unless the Court has further questions. I'll reserve them. Let's hear from the government, because I do want to hear what the government's response is to the Winn argument, because the language in Winn is not very good for you. Thank you. May it please the Court, Larry Fong for the United States. Let me just first point out that we are in disagreement over what the third element is. And if the government is correct that the third element is conviction, and we strongly believe that's correct, then the Winn case is simply irrelevant. Yeah, but you charged commission. Isn't that what the indictment charges? The indictment charges it, but... There you are. Well, but even if it's charged commission, this Court has said, in order to protect the defendant, we will read it narrowly and require the government to prove a conviction. Well, narrowly here means, or rather say, if we're going to protect the defendant, I think we should hold the government to what it charged, because if it's commission, you are disadvantaged. Isn't that right? I don't know if we're disadvantaged. No, you clearly are disadvantaged, because if the issue is commission, then Winn is relevant, whether controlling is another matter. If it's conviction, Winn's not relevant. There's a conviction. Well, yes, Winn becomes important in that respect. But we would disagree. From the beginning, first of all, the pretrial motions were held before a different judge, and there it's very clear. This whole issue of the misdemeanor conviction came up. The judge said the element's conviction. The government said it's conviction. The government offered a jury instruction that said the element is conviction. Pretrial, the judge instructed that it was conviction. During trial, in discussing the warrant of removal, he said it was conviction. It wasn't until the last minute that defense counsel, not Ms. Kuhn in this case, came in and tried a second bite at the apple to get this whole notion of commission and misdemeanor in again, and it came up. So you're arguing that it was a construction amendment of the indictment? So you're arguing that the theory of the trial was conviction? Yes, yes. Throughout the whole time, everybody understood it was conviction, up until the very end when defense counsel submitted this. And then the judge changed his mind and said commission. I think it was a her by then. Might have been. It was Judge Gonzalez. Well, actually, it was Judge Benitez by the time the trial came around. Oh, was it? I'm sorry. It was Judge Gonzalez in the beginning? It was Judge Burns initially. But I think at one point there was a – this went through a couple of judges, I believe. But to answer the Winn question, first of all, Winn dealt with a NOLO plea. We don't have a NOLO plea here. Winn's discussion of misdemeanor convictions was clearly – it wasn't at issue there. More importantly, it's just wrong reasoning. Winn references the notes to the hearsay rule 803.22 in the advisory notes saying that's where the advisory notes tell us misdemeanor. The advisory notes never use misdemeanor. They use minor offenses. They talk about three cases out of Idaho, Minnesota, and California, all dealing with vehicle offenses and how historically in those states, because those are minor offenses, those states had statutes that prevented the use of those minor convictions to prove the commission of some offense in a later civil trial between those parties. And it was that that the advisory notes are referencing. Never did the advisory notes say misdemeanor. They always talked about minor offenses. So not only was the Winn talk about misdemeanor dicta, but it's just wrong, and it was based on a misconception of the advisory notes for 803.22. Right or wrong were bound by what prior panels decide, and what constitutes ignorable dicta is a matter of active debate among us. I understand. And this is pretty clearly articulated, clearly well thought out, if I can use the word dictum, but this is not sort of a passing, glancing reference. I would agree that whoever wrote this meant to say that. I would just say they're wrong. And since it's dicta, they're wrong because if you do the research and look at the advisory notes, they just don't talk about misdemeanors. But I would argue in any event, this is all irrelevant. It's clear this court, if we're going to recognize precedent by this court, this court has clearly and consistently said conviction is the element. And that's the element that the government had to prove, and in fact it did prove. And Rodriguez-Gonzalez is not to the contrary. In fact, it says we have previously held that the government has conceded, and the government has conceded that a previous conviction for illegal entry is an element of the felony offense of 1325. Further, this court has stated that absent proof of a former conviction, the defendant should not be given a felony sentence. So even as late as 2004 in Rodriguez-Gonzalez, this court has clearly said that conviction is the element. If that's the element, the government proved it. It proved it by the best evidence available. As Ariaga-Segura says, the best evidence available is the misdemeanor conviction, and that's what we proved here. Are there any further questions? I'll try to be very brief. Regarding the constructive amendment, I would say that the government was proceeding through the trial on the assumption that it needed to prove the conviction, but it did charge the commission. And by the end of the trial, the closing instructions were commissioned without any clarification to the jury that the instructions had changed. But if the government is proceeding all the way through trial on the assumption that all it needs to prove is conviction, it doesn't quite seem sensible at the end to say, well, now you've got to prove commission and then make the argument that the evidence that you've produced that was fully sufficient to prove conviction isn't enough. Because the government could have, I guess, come in with evidence of commission had it been on notice that that was the evidence required. Well, it did charge commission. The preliminary instructions were conviction. There was evidence of a conviction. And then at the Rule 30 conference, the government is conceding, I'm arguing, that the element is commission. And so I think it is a confusing landscape, and I don't think the government Why does it all make what happened before? If the element is conviction, and they proved conviction, how are you prejudiced? If the element is conviction, then I lose, yes. Regarding the argument that Wynne was dicta, I would note that in the discussion of 803.22, it's saying that the conviction at issue was a no-contest plea and a misdemeanor, and that it says evidence of Wynne's misdemeanor, no low contender convictions, failed on both scores. So you could characterize it as an alternative holding? Right. It's addressing both points. The 803.22 issue, although I can't speak to those state cases, the advisory notes do say, Practical considerations require exclusion of convictions of minor offenses, not because the administration of justice in its lower echelons must be inferior, but because motivation to defend at this level is often minimal or nonexistent. And then it says, Hence, the rule includes only convictions of felony grade measured by federal standards. So I think it does address that issue of misdemeanor convictions. And finally, I would just point out that Rodriguez-Gonzalez, which is the 2000-N-4 case, interchangeably refers to conviction and commission. It does state, Because the subsequent commission changes the nature of the crime, the prior commission must be charged. It later says, A prior commission affects not merely the defendant's sentence, but the very nature of this crime. And then it says, Because the fact of a previous entry is more than a sentencing factor and must be charged. Thank you. Thank you both sides for this argument. The case of the United States v. Romero-Corona now submitted for decision.
judges: Korman, Farris, Fletcher